Tom Jones, the defendant, appeals from the trial court's denial of his motion to set aside a default judgment in the amount of $75,000 entered in favor of Hydro-Wave of Alabama, Inc.
This action began in 1984 when Hydro-Wave of Alabama, Inc., filed a 12-count complaint against Hydro-Wave, Inc., and several of its agents, including Tom Jones, alleging breach of contract and fraud. The dispute between the parties emanates from a contract in which Hydro-Wave, Inc., agreed to purchase 500 Hydro-Wave "instant demand" water heaters from Hydro-Wave of Alabama. Hydro-Wave of Alabama alleges that, relying on the defendants' contractual obligation to purchase the water heaters upon completion, it borrowed money for the purpose of manufacturing the water heaters, and did so to its detriment. When Hydro-Wave of Alabama presented the finished water heaters to the defendants for purchase, the defendants rejected them, giving as their reason defectiveness of the finished products. In their timely filed answer, Hydro-Wave, Inc., and the individual defendants, including Tom Jones, set forth as their affirmative defense the plaintiff's failure to comply with the conditions of the contract by manufacturing defective water heaters. On February 11, 1985, because of the defendants' failure to obey the trial court's discovery orders, which compelled them to produce documents for inspection by the plaintiff, *Page 612 
and because of their delays in answering interrogatories, plaintiff filed a motion for default judgment. On February 15, 1985, defendant Hydro-Wave, Inc., answered the interrogatories, explaining in detail why the water heaters were, in its opinion, defective and thus unworthy of serving the purpose for which they were to be purchased. In essence, the defendant asserted the defense of breach of contract on the ground that the plaintiff did not manufacture functional water heaters consistent with the plans supplied by Hydro-Wave, Inc. In response to the plaintiff's motion for default judgment, the trial court entered an order on March 6, 1985, directing the defendants to comply with its discovery orders or, in the alternative, to provide the court with substantial reasons for their failure to do so. Apparently, the defendants had not yet produced the documents requested by the plaintiffs. On May 17, 1985, predicating its decision on the failure of Hydro-Wave, Inc., to comply with its March 6 order, the trial court entered a default judgment against defendant Hydro-Wave, Inc.; and, in accordance with a consent judgment agreed upon by Hydro-Wave, Inc., and Hydro-Wave of Alabama, the trial court entered a judgment in the amount of $70,000 against defendant Hydro-Wave, Inc.
Meanwhile, the plaintiff continued its suit against Tom Jones, claiming damages incurred from Jones's alleged breach of contract and from his alleged fraud. The plaintiff moved for summary judgment and stated in an affidavit supporting its motion that Tom Jones, as an agent of Hydro-Wave, Inc., approached Hydro-Wave of Alabama with a proposal for it to build water heaters to be purchased by Hydro-Wave, Inc., upon completion and then influenced the First National Bank of Florence to lend the plaintiff the money to manufacture the water heaters by assuring the bank that he and Hydro-Wave, Inc., would purchase them. According to the plaintiff, Jones's representation induced it to enter a contract with Hydro-Wave, Inc., and, in turn, to manufacture the water heaters, to its detriment.
The day before the summary judgment hearing, Jones retained new counsel; his first attorney, after court approval, withdrew, stating that his "relationship with Mr. Jones over the past several months has been more adversarial than advisory." Jones submitted an affidavit in opposition to the motion for summary judgment in which he disclaimed any responsibility for contractual commitments made by Hydro-Wave, Inc., and not by him. Jones stated that he made no representation to the First National Bank of Florence that he individually intended to purchase the water heaters. He further stated that at all times he acted solely as a representative of Hydro-Wave, Inc., and not in an individual capacity and that, when he entered discussions with the plaintiff and the bank, the contract between Hydro-Wave, Inc., and Hydro-Wave of Alabama had already been entered. The trial court denied the plaintiff's motion for summary judgment.
On September 22, 1986, the day on which the case was set for trial, Jones failed to appear. In view of this, the trial judge proposed entering a default judgment; but, when Jones's attorney informed him that his client had had no prior knowledge of the trial date, the trial judge postponed the case until September 24. The trial court later changed this date to September 25, in spite of Jones's objections that this change conflicted with his out-of-town business engagements. On September 25, 1986, Jones once again failed to appear for trial, and, consequently, the trial judge entered a default judgment against him for $75,000. Jones then filed a motion to set aside the default judgment. In addition to averring the existence of a meritorious defense, Jones argued that his nonappearance was attributable to an illness that prevented him from traveling the long distance from Oklahoma to Alabama. The record shows that Jones did in fact visit the Norman Manor Emergency Center in Norman, Oklahoma, on September 24, 1986, and was treated there by the attending physician, Dr. Husky, who diagnosed Jones's illness as a syncopal episode, or in laymen's terms, a faint. The trial court denied the motion, and Jones appeals. *Page 613 
The issue here is whether the trial court abused its discretion in denying Jones's motion to set aside the default judgment. For the reasons set out below, we hold that the trial court did not abuse its discretion.
The parties' briefs indicate some confusion as to whether Jones sought to have the default judgment set aside pursuant to Rule 55(c), Ala.R.Civ.P., or pursuant to Rule 60(b). Because Jones called the motion a "Motion to set aside Default Judgment" and because he did not expressly set out any of the grounds for relief from judgment enumerated under Rule 60(b), it appears that Jones intended to invoke Rule 55(c) and not Rule 60(b). Moreover, Jones filed the motion within the 30-day period after entry of judgment, as mandated by Rule 55(c). For these reasons, we will consider Jones's motion to be a Rule 55(c) motion.
 I.
The pertinent part of Rule 55(c) provides: "The court may also set aside a judgment by default on the motion of a party filed not later than 30 days after the entry of the judgment." Although Rule 55(c) vests a trial judge with an extensive amount of discretionary authority, a ruling on a Rule 55(c) motion must not be made without taking into consideration restrictions on the use of that discretion and without examining certain guidelines. First, a trial judge, in exercising his discretion under Rule 55(c), must begin with the presumption that a litigant has a paramount right to defend on the merits and that, therefore, cases should be resolved on the merits whenever practicable. Kirtland v. Fort Morgan AuthoritySewer Service, Inc., 524 So.2d 600 (Ala. 1988); Article I, Section 10, Alabama Constitution of 1901; Hritz v. Woma Corp.,732 F.2d 1178, 1181 (3rd Cir. 1984). See Ex parte IllinoisCentral Gulf R.R., 514 So.2d 1283 (Ala. 1987) (stating that Rule 55(c) contemplates a liberal exercise of discretion in favor of setting aside default judgments); and Oliver v.Sawyer, 359 So.2d 368 (Ala. 1978) (doubts should be resolved in favor of the defaulting party). Second, when exercising discretion under Rule 55(c), a trial court must consider the three-factor analysis enunciated by this Court in Kirtland v.Fort Morgan Authority Sewer Service, Inc., supra. As a threshold matter, a trial court must peruse the defaulting party's answer, the motion to set aside the default judgment, the motion's supporting affidavits, any other affidavits submitted by the defaulting party such as affidavits associated with summary judgment proceedings, and any relevant discovery matters to ascertain whether the defaulting party has shown the existence of a meritorious defense. The defaulting party does not have to prove the meritorious defense. But, the defaulting party must set forth with sufficient particularity a plausible defense — a defense predicated on a viable legal theory and a strong factual basis that counters the cause of action averred in the complaint. The defense must be of sufficient merit to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means that would warrant submission of the case to the jury. Kirtland v. Fort Morgan AuthoritySewer Service, Inc., supra. Next, the trial court must determine whether the non-defaulting party would be substantially prejudiced if the default judgment is vacated. Last, the trial court must determine whether the defaulting party was culpable in committing the default. Id.
 II.
Applying these principles to the facts of this case, we hold that the trial court did not abuse its discretion in denying Jones's Rule 55(c) motion.
 a) Presentation of a Meritorious Defense
After reviewing Jones's Rule 55(c) motion, his answer, and his affidavit *Page 614 
in opposition to the motion for summary judgment, we conclude that Jones did satisfy the meritorious-defense requirement. Hydro-Wave of Alabama brought two claims against Jones, one for fraud and one for breach of contract. To show the existence of a meritorious defense, Jones had to allege sufficient facts or adduce enough evidence to counter these two claims. Jones failed to do this in his answer or in his motion to set aside the default judgment. In his motion, Jones alleged in conclusory fashion a meritorious defense, but, as we stated inKirtland v. Fort Morgan Authority Sewer Service, Inc., supra, the conclusory statement of a meritorious defense is insufficient. His answer contains general denials plus an affirmative defense averring breach of contractual conditions. This is also inadequate. Jones failed to include a copy of the contract in the record; therefore, it is impossible for us to know whether the trial court had an opportunity to examine the contract to determine the validity of Jones's alleged defense. Furthermore, the answer does not rebut the plaintiff's allegations of fraud except by general denial. On the other hand, in opposition to the plaintiff's summary judgment motion, Jones did produce an affidavit that contained specific factual statements rebutting the plaintiff's fraud and contract claims. Jones stated: "I never contracted with plaintiff by written agreement or otherwise to purchase Hydro-Wave Instant Demand Water Heaters. I never represented to the First National Bank of Florence that the plaintiff was going to manufacture Hydro-Wave Instant Hot Water Heaters for me. I did not promote the Instant Demand Hot Water Heater in Florence, Alabama and in fact said promotion had occurred before my involvement with Hydro-Wave of Alabama, Inc. The agreement to purchase materials and to hire personnel necessary to manufacture Hydro-Wave Instant Demand Hot Water Heaters had already been entered into by the plaintiff prior to any activity on my part in reference to the plaintiff's endeavors.
 "Prior to my meeting with plaintiff's representatives, plaintiff had already entered into a transaction with Hydro-Wave, Inc. and previously received a purchase order from Hydro-Wave, Inc. My only occasion to meet with the representatives of the plaintiff and representatives of the First National Bank of Florence was long after said transaction, the purpose of which was to assure the First National Bank of Florence, who was at that time pressing for the payment of the loan, that Hydro-Wave, Inc., was trying to help the plaintiff to become a profitable concern so that the bank would be re-paid on their loan. My only involvement with the plaintiff or its representatives was as a representative of Hydro-Wave, Inc. All of my involvement with the plaintiff was in my capacity as a representative of Hydro-Wave, Inc. and not in any way in my capacity as an individual."
Jones's affidavit provided the trial court with a sufficient factual basis on which to conclude that Jones presented a genuine issue of material fact, and for this reason, Jones satisfied the requirement of showing the existence of a meritorious defense. The fact that the trial court deemed the case worthy of submission to the jury, indicates that the result of the case could conceivably be different if it were adjudicated on the merits.
 b) Prejudice to Hydro-Wave of Alabama
Because we decide this case on the basis of the trial court's finding of culpability and an absence of a reasonable explanation, we pretermit discussion of the prejudice, if any, that could befall Hydro-Wave of Alabama if the default judgment were set aside.
 c) Culpability of Jones
Even though Jones met the threshold requirement by setting forth enough evidence that a trial court could have found the existence of a meritorious defense, the trial court's denial of the Rule 55(c) motion was proper in view of the facts of this case, which warrant a finding of intentional "conduct evidencing disrespect for the judicial *Page 615 
system." See Ex parte Illinois Central Gulf R.R., supra, at 1288. During the proceeding to assess damages, Judge Suttle, expressing his contempt for Jones's conduct, remarked: "[T]he Court is completely incredulous as to Mr. Jones's claims as to why he can't be here. It's obvious to this Court that he is just avoiding a trial and playing games with the Court. . . ." Later in the proceeding, speaking to Jones's attorney, Mr. Whitten, Judge Suttle stated:
 "[I]t's just been a pattern of Mr. Jones. He appears, his lawyer withdraws in July of '85, and nothing is done until the day before summary judgment hearing. He hires you the day before the summary judgment hearing, and he mysteriously doesn't get the letters until the same day the trial is set. When he gets those, he's unable to come because of some important meetings with boards or Vice Presidents of the United States, and then when that is not accepted as an excuse, he somehow comes down with an illness. Randy, I trust you and I know you have done everything you can, but I don't believe Mr. Jones's excuse. And in any event, the Court was going to enter a default Monday because of his failure to appear at the call of the docket Monday, and I thought I was doing him a favor by giving him until Thursday, after you came over to me Monday afternoon or Tuesday morning, whenever it was, and told me he had just gotten notice on that Monday. I really said I was going to enter the default on Monday, so when I said I would move it to Thursday, I thought I was doing him a favor. And then he pulls what I consider to be a stunt. That's the reason I'm entering the default."
We have stated that reasonable explanations for defaults, such as attorney neglect attributable to innocent inadvertence, militates in favor of a finding of an absence of culpability and provides a basis for setting aside a default judgment.Kirtland v. Fort Morgan Authority Sewer Service, Inc., supra.
Jones's excuse for his failure to appear on the day of trial required the trial court to determine whether it was reasonable. The trial court concluded that it was not, and we defer to its decision.
The trial court afforded Jones two opportunities to defend, and Jones responded by twice failing to appear. The record is clear that Jones had prior knowledge of the second trial setting and that he requested a continuance, stating that he had a meeting with Vice President George Bush. By maintaining his business engagements in Oklahoma in spite of the trial date, Jones evinced the minimal amount of concern that he had regarding the trial. The trial court threatened to dispose of the case by entering a default judgment in the wake of Jones's first failure to appear, but gave him the benefit of the doubt and reset the case. After providing the trial court with a justifiable reason for entering a default judgment on September 22, Jones should have realized that his appearance on September 25 was imperative and that he would be jeopardizing his opportunity to defend by remaining out of state. Although the record clearly shows that Jones became ill on September 24, the gravity of Jones's illness is questionable. The doctor who diagnosed Jones's illness on September 24 stated that Jones suffered from a faint and that he advised him "to eat regular meals and if symptoms arise to go to the emergency room." The doctor neither prescribed medication nor admitted Jones into the hospital. There is no evidence suggesting that Jones's illness was so debilitating as to prevent him from traveling to Alabama for the trial on September 25. We can certainly understand how a sudden illness, if serious enough, could excuse a nonappearance on the day of trial. See Ken-MarAirpark, Inc. v. Toth Aircraft Accessories Co., 12 F.R.D. 399
(W.D.Mo. 1952). The facts of this case, however, support a finding that Jones's illness did not rise to this level.
Not only did the trial court consider Jones's illness to be insufficient as a ground for setting aside the default judgment, but it also construed Jones's nonappearance as an intentional evasion of the court and as a flouting of its authority. The record supports such a finding. After *Page 616 
reviewing the facts, we hold that the trial court's finding of culpability was within the bounds of its discretionary authority under Rule 55(c).
We recognize that in this opinion and, even more so inKirtland v. Fort Morgan Authority Sewer Service, Inc., supra, we have fortified and reemphasized our long-established and compelling policy objective of affording litigants a trial on the merits whenever possible. To accomplish this objective without diminishing the importance of judicial economy, we delineated certain steps that trial courts must follow when considering Rule 55(c) motions. One step requires the trial judge to determine whether the defaulting party has propounded a meritorious defense. We elaborated on the meritorious-defense requirement — primarily by explicitly defining the word "meritorious" — and, in doing so, we in effect removed much of the broad discretionary authority with which a trial judge was vested under Rule 55(c), Ala.R.Civ.P., at least in regard to ascertaining the existence of a meritorious defense. Insofar as this Court is rightfully predisposed toward giving defendants an opportunity to defend, this result was intended. However, we acknowledge that, due to a trial judge's superior vantage point, the trial court is the more suitable arbiter for determining with accuracy the culpability of the defaulting party's conduct, and, for this reason, we will show great deference toward the trial court's decisions with respect to such culpability. The utility of the default judgment rule depends on its effectiveness in encouraging compliance with procedural rules so that actions may be decided expeditiously. To facilitate an orderly functioning of the judicial system and to preserve the integrity of the court, parties who affront the court by intentionally disregarding trial dates, court orders, or procedural rules, with resulting unnecessary delay, should justifiably incur the ultimate sanction of losing their opportunity to defend. For the default judgment to be a potent sanction, the trial court, when confronting litigants who have manifested willfulness and bad faith in committing defaults, must not be unduly hampered in granting default judgments, and, subsequently, upholding those judgments when deciding Rule 55(c) motions.
For the foregoing reasons, we hold that the trial court did not abuse its discretion in denying Jones's Rule 55(c) motion.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs specially.