738 So.2d 798 (1999)
Beatrice E. OLIVER
v.
Patricia TOWNS.
1970312.
Supreme Court of Alabama.
January 15, 1999.
Rehearing Denied June 11, 1999.
*799 Beatrice E. Oliver, appellant, pro se.
James G. Bodin and Julian McPhillips of McPhillips, Shinbaum, Gill & Stoner, L.L.P., Montgomery, for appellee.
SEE, Justice.
In this legal-malpractice action concerning the misuse of a $12,000 settlement, the trial court entered a default judgment against attorney Beatrice E. Oliver and in favor of her former client Patricia Towns. The trial court awarded Towns $500,000 in compensatory damages and $1 million in punitive damages. The trial judge denied Oliver's subsequent motion that the judge recuse himself from the case and denied Oliver's motion for a thorough review of the damages award for excessiveness. We hold that the trial court correctly entered the default judgment and correctly denied Oliver's motion that the trial judge recuse himself; however, we hold that the trial court erred in refusing to review the question of excessiveness of the damages. Accordingly, we affirm in part, reverse in part, and remand.

I.
In March 1990, Towns was involved in an automobile accident in which she sustained personal injuries. Towns became acquainted with Oliver, an attorney practicing law in Montgomery, when Towns rented property from Oliver's mother and uncle. Towns retained Oliver to file a personal-injury action for her in Butler County. She signed a contingency-fee contract that provided for Oliver to receive 40% of any settlement, in return for Oliver's legal services. Oliver settled the case for $12,000 in September 1992.
On September 19, 1995, Towns filed this legal-malpractice action against Oliver, in the Montgomery Circuit Court, alleging, among other things, breach of contract, fraud, deceit, and misrepresentation. Oliver failed to make an appearance, and, on May 9, 1996, the trial court entered a default judgment in favor of Towns. A hearing to determine damages was set for May 20. Oliver failed to appear at the May 20 hearing, but, on that same day, acting pro se, she filed a motion to set aside the default judgment and filed an *800 answer, counterclaims, and a motion for summary judgment.
During the course of the May 20, 1996, hearing, the trial judge had heard testimony indicating the following: that Oliver failed to inform Towns of the settlement; that Oliver forged or had someone forge Towns's endorsement on the settlement check; that Oliver cashed the settlement check without Towns's consent; that Oliver failed to transfer any of the settlement proceeds to Towns; that Towns did not learn of the settlement until May 1995, when she contacted directly the insurance carrier for the defendant in the automobile-accident case; that Oliver had dealt with a previous client in a similar manner; and that Oliver had deliberately avoided service of process.
Oliver's summary-judgment motion contained her affidavit, which claimed that Towns had been apprised of the settlement; that Towns had signed a "release and satisfaction" as to the personal-injury claim; that Towns had endorsed the check; that Towns had asked Oliver to deduct overdue rent from her settlement; and that Oliver had attempted to transfer to her the settlement, less fees and expenses, but that Towns had refused to accept the money. The motion also contained a copy of a notarized "release and satisfaction" bearing the signature of Towns and Oliver.[1] On November 27, 1996, the trial court set aside the default judgment and scheduled a trial for March 3, 1997.
On February 26, 1997, the day before a scheduled pretrial conference, Oliver sent a motion for continuance, by overnight carrier, to the office of the clerk of the Montgomery Circuit Court, asking for continuances of the pretrial conference and the trial, based on illness. Oliver failed to support her motion with any documentation evidencing that she had an illness. Although the trial court did not rule on the motion for a continuance, Oliver failed to appear for the pretrial conference on February 27. Again, even though the trial court did not grant the motion for continuance, Oliver failed to appear for trial on March 3. On March 3, the trial court again heard testimony about Oliver's conduct and about the harm suffered by Towns. The evidence indicated that, as a result of Oliver's actions, Towns had incurred, among other things, a loss of housing, a bad credit rating, and mental anguish.
On March 5, 1997, the trial court entered a second default judgment for Towns. In its order, the trial court stated that Towns was entitled to recover damages on her breach-of-contract, fraud, deceit, and misrepresentation counts. The default judgment awarded Towns $500,000 in compensatory damages[2] and $1 million in punitive damages.
Oliver filed a timely motion for a new trial, challenging the process by which the trial court had entered the default judgment; making a general challenge to the damages as excessive; and challenging specifically the excess of the punitive award over the $250,000 cap contained in Ala.Code 1975, § 6-11-21. She also filed a motion for recusal of the trial judge. After a hearing, the trial court denied the motion for a new trial, without examining the question of excessiveness of the damages, and denied the motion for recusal. Oliver appealed.[3]

*801 II. Validity of the Default Judgment

Oliver argues that the trial court erred in refusing to set aside the second default judgment.[4] Specifically, she argues that the trial court erred by not granting her motion to continue the trial because of her illness. Oliver claims that the motion should have been granted because, she says: she was a party representing herself; she was, as well, a material, competent witness; and she had a meritorious defense. Oliver also argues, among other things, that the default judgment was not based on the evidence, but instead was intended to send a message to other lawyers. Towns argues, in response, that the trial court did not abuse its discretion in refusing to set aside the second default judgment.
"The applicable standard of review in appeals arising from a trial court's order granting or denying a motion to set aside a default judgment is whether the trial court's decision constituted an abuse of discretion." Bailey Mortgage Co. v. Gobble-Fite Lumber Co., 565 So.2d 138, 139 (Ala.1990) (citing Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988)). In exercising its discretion, the trial court must consider "whether the defendant has a meritorious defense[,]... whether the plaintiff will be unfairly prejudiced if the default judgment is set aside and whether the default judgment was a result of the defendant's own culpable conduct." Id. at 140 (internal quotation marks omitted).
On the one hand, in Ex parte Robinson Roofing & Remodeling, Inc., 709 So.2d 444 (Ala.1997), this Court held that the trial court abused its discretion in entering a default judgment against a pro se defendant. The pro se defendant had acted in good faith by filing an answer with the plaintiff, but not with the trial court. Id. at 444. Because the pro se defendant had failed to comply with Rule 5(d), Ala. R. Civ. P. (by failing to file an answer with the clerk of the court), the trial court entered a default judgment against him. Id. at 445. It appeared that the defendant had a meritorious defense, that the plaintiff would not be unfairly prejudiced if the court set aside the default judgment, and that the defendant's conduct was not culpable. Id. at 445-46. See generally Kirtland, 524 So.2d 600. Thus, this Court held that the trial court abused its discretion in denying the defendant's motion to set aside the default judgment. Id. at 446.
On the other hand, in Jones v. Hydro-Wave of Alabama, Inc., 524 So.2d 610 (Ala.1988), this Court affirmed the trial court's refusal to set aside a default judgment based on the trial court's finding of culpability on the part of the defendant. This Court determined that the defendant had satisfied the meritorious-defense requirement, and that the plaintiff would not be prejudiced if the default judgment were set aside; however, this Court agreed that the defendant's conduct was culpable. Id. at 614-15. The defendant had failed to appear for trial because of a business engagement; that failure prompted the trial *802 court to threaten to enter a default judgment. The trial court gave the defendant a second chance, but the defendant missed the second trial date because of an illness. Although the defendant provided evidence establishing that he was actually ill, "[t]here [was] no evidence suggesting that [the defendant's] illness was so debilitating as to prevent him from traveling to Alabama for the trial." Id. at 615. Thus, this Court held that the trial court did not abuse its discretion in denying the defendant's motion to set aside the default judgment. Id. at 616.
Oliver's conduct is similar to that of the defendant in Jones and, in some respects, it is worse. Oliver missed her first trial date, and a default judgment was entered. The trial court then gave Oliver a second chance when it set aside the first default judgment. Despite the fact that the trial court had not ruled on Oliver's motion for a continuance of the pretrial conference and the second trial, Oliver missed both the conference and the second trial date because of an alleged illness. Oliver, however, had absolutely no documentation only her own assertionto indicate that she was in fact sick. The trial judge also received evidence indicating that Oliver had deliberately avoided service of process before the first trial date. Because of the evidence in the record indicating culpable conduct and because the trial judge held a hearing at which he observed Oliver and could judge the credibility of her reasons for the default, we defer to the trial court's discretion in denying Oliver's motion to set aside the default judgment:
"[D]ue to a trial judge's superior vantage point, the trial court is the more suitable arbiter for determining with accuracy the culpability of the defaulting party's conduct, and, for this reason, we will show great deference toward the trial court's decisions with respect to such culpability. The utility of the default judgment rule depends on its effectiveness in encouraging compliance with procedural rules so that actions may be decided expeditiously. To facilitate an orderly functioning of the judicial system and to preserve the integrity of the court, parties who affront the court by intentionally disregarding trial dates, court orders, or procedural rules, with resulting unnecessary delay, should justifiably incur the ultimate sanction of losing their opportunity to defend."
Jones, 524 So.2d at 616.[5] Accordingly, we hold that the trial court did not abuse its discretion in denying Oliver's motion to set aside the second default judgment.

III. Damages
Oliver challenges the award of punitive damages as not supported by clear and convincing evidence, and she challenges the compensatory and punitive awards as excessive. Oliver also points out that the punitive award of $1 million is excessive because it is greater than the $250,000 cap established by Ala.Code 1975, § 6-11-21. Towns responds by pointing out that the trial court received testimony in open court on two occasions regarding Oliver's conduct and the harm Towns had incurred as a result of that conduct; by arguing that the reprehensibility of Oliver's conduct justifies the large awards; and by pointing out that this Court held the $250,000 cap unconstitutional in Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993). Moreover, Towns argues by implication that the damages awards may not be challenged after the appropriate entry of a default judgment.
This Court has stated: "After the judgment by default was entered, ... [t]he *803 plaintiff's right of recovery [was] established by [that] judgment, [and] the only questions presented by the bill of exceptions, proper to be considered by [this Court], are those relating to damages." Hall v. Nix, 156 Ala. 423, 425, 47 So. 335, 335 (1908); Washington v. Porter, 128 Ala. 278, 282, 29 So. 185, 186 (1900). Although Oliver was not present at the March 3, 1997, hearing at which the motion for a default judgment and the damages claims were argued, she filed a timely post-judgment motion challenging the evidentiary basis for the damages award, as well as the amount of the damages awarded. Oliver appeared before the trial court on June 9, 1997, and argued her challenges to the awards of compensatory and punitive damages. Accordingly, after the default judgment had established her liability on Towns's malpractice claim, Oliver properly challenged the amounts of compensatory and punitive damages. See Fuller v. State, 269 Ala. 312, 325, 113 So.2d 153, 164 (1959) (stating that a party can appeal only as to issues raised before the trial court).
Despite Oliver's request for a hearing to review the question whether clear and convincing evidence supported an award of punitive damages and the question whether the compensatory and punitive awards were excessive, the trial court summarily denied Oliver's post-trial motion. The order denying Oliver's post-trial motion does not address whether the evidence supporting the punitive award was "clear and convincing" as required by Ala. Code 1975, § 6-11-20. Further, in its order the trial court made no review of the compensatory and punitive awards to determine whether they are excessive; such a review is required by BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989); and Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). This Court has stated that it has the duty "to require the trial courts to reflect in the record" the reasons for interfering with an award of damages, on grounds of excessiveness, or refusing to do so. Hammond, 493 So.2d at 1379. The requirement of a review for excessiveness has traditionally been applied to ensure that an award "is not the result of bias, passion, prejudice, corruption, or other improper motive [of the jury]," Green Oil, 539 So.2d at 222 (citing City Bank of Alabama v. Eskridge, 521 So.2d 931 (Ala.1988)). When, as here, the trial court steps into the shoes of the jury to award damages where the law allows an award, the review factors set out in Hammond and Green Oil are relevant to the question whether a trial court's own award of damages is excessive. See generally Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524, 532 (Ala.1997) (stating that appellate judges can review a trial court's judgment concerning damages based on a hearing held pursuant to Hammond, Green Oil, BMW, and Ala.Code 1975, § 6-11-23(b)).[6]
Upon a timely motion, the trial court must hold a hearing to determine whether a damages award is excessive. Johnson, 701 So.2d at 532 (citing Hammond, 493 So.2d 1374; Green Oil, 539 So.2d 218; and § 6-11-23(b)); cf. Bevill v. Owen, 364 So.2d 1201, 1203 (Ala.1979) (stating that appellate courts generally do not address issues not decided by the trial court). Oliver filed a timely motion for a new trial. That motion included a request for a hearing on her claim that the damages awards were excessive. Thus, the trial court erred in denying Oliver a review of the damages awards for excessiveness. Johnson, 701 So.2d at 532. On remand, the trial court should hold a hearing to consider whether the compensatory award is excessive; whether clear and convincing evidence supports a punitive award; and, if so, whether the punitive award is excessive. *804 The trial court should then set forth in an order its findings of fact and conclusions of law supporting the final award or awards.
On remand, the trial court should, as part of its review of the punitive award for excessiveness, address whether the $250,000 cap established by the Legislature in § 6-11-21 applies in this case.[7]

IV. Recusal
Oliver argues that the trial court's awarding a total of $1.5 million on a $12,000 malpractice claim is sufficient to demonstrate that the trial judge had a personal bias and, therefore, that the judge should have recused himself upon her motion. Towns argues that the trial judge conducted the proceedings properly and took no action that warrants recusal.
In discussing the disqualification of judges, this Court has stated:
"Recusal is required ... when the facts are such that it is reasonable for a party, for members of the public, or for counsel to question the impartiality of a trial judge. However, a mere accusation of bias that is unsupported by substantial fact does not require the disqualification of a judge. The test is whether a person of ordinary prudence in the judge's position knowing all of the facts known to the judge [would find] that there is a reasonable basis for questioning the judge's impartiality."
Ex parte Bryant, 682 So.2d 39, 41 (Ala. 1996) (quoting Ex parte Melof, 553 So.2d 554, 557 (Ala.1989), and other cases) (internal quotation marks omitted). Our careful review of the record shows that Oliver's claim of bias is a "mere accusation." The record indicates the trial judge conducted the proceedings in his court in an impartial manner. Moreover, we will not judicially create a rule under which trial judges are required to recuse where the award of damages is greater than the defendant would have hoped. Accordingly, we hold that the trial judge properly denied Oliver's motion for recusal.

V. Summary
We affirm the denial of Oliver's motion to set aside the second default judgment, and we affirm the denial of Oliver's recusal motion. We reverse the denial of Oliver's motion for a hearing and a detailed review of the evidentiary basis for the punitive award and of the compensatory and punitive awards for excessiveness. We remand for further proceedings not inconsistent with this opinion.
APPELLANT'S MOTION TO AMEND BRIEF GRANTED; APPELLEE'S MOTION TO DISMISS APPEAL DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, and HOUSTON, JJ., concur.
KENNEDY and LYONS, JJ., concur in part and concur in the result in part.
COOK, J., concurs in the result.
KENNEDY, Justice (concurring in part and concurring in the result in part).
I concur in Parts II and IV of the majority opinion, which affirm the default *805 judgment and the denial of the motion to recuse. However, I concur only in the result of Part III, which addresses the Court's decision to remand for further proceedings regarding Ms. Oliver's argument that the award of damages is excessive.
The trial court held a hearing on Ms. Oliver's motion for a new trial or a remittitur, so I would not hold that a further hearing is necessary. However, the trial court's order denying her motion does not set forth its reasons for denying a remittitur. Under the procedures this Court established in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), a trial court should ordinarily provide reasons for reducing, or refusing to reduce, an award that is challenged as excessive. Given the size of this award, such a statement would be helpful to this Court in reviewing the appellant's argument that the award should be reduced. Therefore, I concur in the result of remanding for the trial court to issue an order stating its reasons for denying Ms. Oliver's request for a remittitur.
I disagree completely with the statement in footnote seven that "we question whether Henderson [v. Alabama Power Co., 627 So.2d 878 (Ala.1993),] remains good law." Henderson was correctly decided, and it effectuates the command of § 11 of the Alabama Constitution that "the right to trial by jury shall remain inviolate."[8]
In addition, I disagree with the implication that § 6-11-21, Ala.Code 1975, may apply in this case because no jury trial ever occurred. The plaintiff in this case requested a jury trial but, because the defendant defaulted, a jury was never empaneled. What the majority suggests would allow a defendant to simply accept a default judgment in order to avoid its own potentially large liability. No matter how egregious the defendant's conduct, the plaintiff, through no fault of their own, would be limited to a maximum recovery of $250,000 in punitive damages. In order to protect a plaintiff's rights and to fulfill the mandates of § 11 of the Alabama Constitution, trial courts might be faced with empaneling a jury in every case involving a potential punitive-damages award where the plaintiff has requested a trial by jury but the defendant has refused to appear in court.
LYONS, Justice (concurring in part and concurring in the result in part).
I concur fully in the majority opinion, except as to Part III. The defendant Oliver asserted both in the trial court and here that § 6-11-21, Ala.Code 1975, applied in this case. However, because she did not ask this Court to revisit Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993) (holding § 6-11-21 unconstitutional as violating the right to trial by jury secured to the citizens of this state by Art. I, § 11, Ala. Const. of 1901), I would confine any reference to § 6-11-21 to an observation that, on remand, the trial court should consider whether that statute has a constitutionally permissible field of operation in this nonjury case.
NOTES
[1] The notary public who attested Towns's disputed signature on the release was Richard Barefield, Oliver's husband.
[2] Although the judgment did not specify the bases for the damages, the compensatory damages were apparently based on Towns's loss of housing, and on her incurring a bad credit rating and her suffering mental anguish.
[3] On August 26, 1997, this Court suspended Oliver from the practice of law for 91 days. This Court's order followed a decision by the Disciplinary Board of the Alabama State Bar finding Oliver guilty of violating the Alabama Rules of Professional Conduct, specifically: Rules 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."); 1.15(c) (requiring a lawyer in possession of property in which both the lawyer and another person claim interests to keep the property separate "until there is an accounting and a severance of their interests"); and 8.4(c) ("It is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."). A 91-day suspension carries with it the requirement that before a lawyer may be reinstated she must satisfy the Alabama State Bar Association that she "has the moral qualifications to practice law in this State and that ... her resumption of the practice of law within the State will not be detrimental to the integrity and standing of the Bar or the administration of justice, and will not be subversive to the public interest." Rule 28(c), Ala. R. Disc. P.
[4] Oliver's original appellate brief was erroneously submitted to the Court of Civil Appeals. It did not include a table of contents, a table of authorities, or an argument. Towns argues that this failure to comply with Rules 2(a)(2)(d) and 28(a)(5), Ala. R.App. P., requires that we affirm the trial court's judgment. However, upon discovering her omissions, Oliver filed a motion to amend her brief; we now grant that motion.
[5] Moreover, we are mindful that Oliver, as an attorney and an officer of the court, is held to a higher standard in her dealings with the court than is a layman, such as the defendant in Robinson. See Jackson v. State, 337 So.2d 1281, 1283-84 (Ala.1976) ("Considering the human effort and monetary expense involved in arranging courtroom hearings, the least a court may expect from its officers is appearance on schedule and full preparation for the dispatch of court business.").
[6] Section 6-11-23(b) states, in part: "In all cases wherein a verdict for punitive damages is awarded, the trial court shall, upon motion of any party, either conduct hearings or receive additional evidence, or both, concerning the amount of punitive damages."
[7] Given the post-Henderson developments in the concept of due-process law, see, e.g., BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the forceful rationale of the dissents in Henderson, 627 So.2d at 894 (Maddox, J., concurring in part; dissenting in part), and id. at 903 (Houston, J., dissenting), we question whether Henderson remains good law. See Henderson, 627 So.2d at 900-01 (Maddox, J., concurring in part; dissenting in part) (recognizing that in Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 20 n. 9, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Supreme Court of the United States noted § 6-11-21 with approval, implying that the $250,000 cap could prevent a punitive-damages award from exceeding the outer limits of due process); Haslip, 499 U.S. at 39, 111 S.Ct. 1032 (Scalia, J., concurring in the result) ("State legislatures and courts have the power to restrict or abolish the common-law practice of punitive damages...."). However, we decline to address this issue before the trial court rules on the applicability of § 6-11-21 to the punitive damages award in this case.
[8] Justice See states that the Supreme Court of the United States has "noted § 6-11-21 with approval, implying that the $250,000 cap could prevent a punitive-damages award from exceeding the outer limits of due process." So.2d at n. 7. However, upon reading Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), I found that the Supreme Court simply noted the existence and the nonapplicability of the statute. It did not indicate a view as to the merits of the statute, and it certainly took no position on the statute's effect under the protections created by our state constitution.