Teresa Darlene Woods ("the wife") and Jimmy Wayne Woods, Sr. ("the husband"), were divorced by a June 21, 1999, judgment of the trial court; the divorce judgment incorporated an agreement reached by the parties. At the time of the divorce, both of the parties' children were minors.
In its June 21, 1999, divorce judgment, the trial court awarded the wife custody of the parties' minor daughter and ordered the husband to pay child support. The divorce judgment provided, in relevant part, that the wife would have exclusive use and possession of the marital home until the parties' children reached the age of majority and that the marital home would then be sold; that the husband would be responsible for paying the mortgage indebtedness until the home was sold; and that the parties would equally divide any equity derived from the sale of the marital home. The divorce judgment also required the husband to be responsible for all but one of the parties' marital debts, to pay the wife periodic alimony, and to maintain a health insurance policy on the wife for two years after the divorce.
On March 28, 2001, the husband petitioned to modify the divorce judgment; in that petition, the husband sought, among other things, a termination of his periodic-alimony obligation, an order requiring the sale of the marital residence, and an award of an attorney fee. In addition, the husband sought a reduction of his child-support obligation because the parties' son had reached the age of majority on October 21, 1999. The wife answered and sought to have the husband held in contempt regarding property-division issues that are not relevant to this appeal.
The parties reached an agreement regarding some of the issues in dispute between them. On June 7, 2001, the trial court entered an order incorporating the terms of that agreement, but setting for a later date its consideration of the issues of child support and whether the marital home should be sold. In its June 7, 2001, order, the trial court specifically stated that "the question of adjusted child support, *Page 543 
including arrearages, if any, shall be determined by the Court as of November 1, 1999."
On July 2, 2001, the wife filed a motion, purportedly pursuant to Rule 59(e), Ala.R.Civ.P., seeking to set aside the June 7, 2001, nonfinal order. In that motion, the wife argued that her attorney was "without authority" to agree to have the issue of child support determined as of November 1, 1999. The wife acknowledged that, in consideration for that agreement upon which the trial court's June 7, 2001, order was based, the husband had agreed to assume responsibility for the payments on her automobile loan and for insurance for her automobile.
On August 23, 2001, the trial court entered a judgment in which, among other things, it modified the husband's child-support obligation and ordered that the marital home be sold. The wife filed a postjudgment motion; the trial court denied that motion. The wife appealed.
The parties' son reached the age of majority in October 1999. The husband had paid $1,006 per month in child support for the parties' two children from the time the parties were divorced in July 1999 until May 2000. In May 2000, the husband unilaterally reduced his child-support payments and began paying the wife $503 per month in child support for the parties' minor daughter. The trial court determined that, pursuant to the Rule 32, Ala. R. Jud. Admin., Child Support Guidelines, the father's child-support obligation for one child should have been $638 per month.
The husband claimed to be entitled to a credit for child support he allegedly overpaid in support for the son between November 1, 1999, the month after the son reached the age of majority, and May 2000, when the husband unilaterally reduced his child-support payments. At the August 13, 2001, modification hearing, the wife's attorney admitted that he had agreed, for purposes of the June 7, 2001, order, that the husband's obligation for child support for the parties' son should terminate as of November 1, 1999. However, the wife's attorney argued that he was without authority to enter into that agreement. The wife's attorney contended that the trial court should set aside its June 7, 2001, order and calculate the husband's child-support obligation for the parties' son by including installments for each month between October 1999 and March 28, 2001, the date the husband filed his petition to modify the divorce judgment.
The other primary issue in dispute between the parties was the division of any equity upon the sale of the marital home. At the time of their divorce, the parties' owned 7.1 acres of land; the marital home is located on that property. In its June 1999 divorce judgment, the trial court awarded the wife the marital home and one acre of land upon which the house was situated. The marital home plus the one acre of land was subject to a mortgage indebtedness totaling approximately $92,000; the husband testified that, at the time of their June 1999 divorce, the parties had approximately $2,000 in equity in that property.
In its divorce judgment, the trial court awarded the husband the remaining 6.1 acres of land adjacent to the marital home. The record on appeal does not clearly indicate whether that property was subject to a mortgage indebtedness, but it is clear that, at the time of the parties' divorce, the 6.1 acres were not subject to the same mortgage as the marital home.
In August 2000, the husband refinanced the marital home, together with the 6.1 acres he received pursuant to the divorce judgment. The husband testified that the *Page 544 
financing was arranged so that all of that property was subject to two mortgages. The wife testified that she first learned that the husband planned to refinance the marital home and the 7.1 acres when the appraiser arrived to value the property. The husband testified that the house and the total of 7.1 acres of land were appraised at approximately $134,000. The husband mortgaged all of that property for a total of $134,487. The husband testified that at the time of the modification hearing, he had no equity in the property that was subject to that mortgage indebtedness.
When he refinanced the mortgage on the marital home and the 7.1 acres, the husband used the proceeds of the two mortgages to repay the first mortgage on the marital home and the one acre of property. The husband testified that he used the excess funds to repay all of the debt for which the divorce judgment ordered him to be responsible. The husband also repaid the $2,220 balance on the credit-card debt the wife was ordered to pay under the terms of the parties' divorce judgment.
The wife submitted into evidence the property descriptions contained in the two refinanced mortgages. The wife contends that that evidence establishes that the two mortgages are secured only by the marital home and the one acre of property on which it is located. The husband testified, however, that the mortgages referenced both the one acre on which the marital home was located and the additional 6.1 acres of property. The husband's attorney argued to the trial court that the wife had subpoenaed only the mortgages on the marital home and that she had not sought to ascertain whether there was a similar mortgage secured by the additional 6.1 acres of property.
In April 2001, the wife vacated the marital home and moved to Arizona to live with her boyfriend. The parties' minor daughter also moved to Arizona with the wife. The wife testified that the parties' son remained in the marital home for one week after she moved to Arizona.
The husband testified that after the wife vacated the marital home, he went to the home, apparently to prepare it for sale. The husband testified that the marital home had been damaged and that it was very messy and littered with trash. The husband testified that many holes had been punched in the walls of the home, that several door facings were damaged, and that the carpet was stained. The husband submitted into evidence photographs of the damage to the home; he also submitted photographs depicting a large amount of trash littering the floors of the vacant house. The husband testified that the wife had also left a great deal of bagged garbage in the backyard; he submitted photographs of that bagged garbage and of the home's backyard, which was littered with trash. The husband testified that he estimated the cost of repairing the damage to the marital home to be approximately $8,000.
The wife testified that the marital home had been clean when she vacated it, but she acknowledged that she had left garbage in the backyard. She testified that she was unable to dispose of the garbage in the backyard because she did not have a vehicle with which to haul it away. The wife testified that either she or the husband could repair the damaged walls. The wife testified that the parties' son and daughter had caused most of the damage in the house, and that, therefore, she wanted to divide the cost of repairs to the house with the husband. The husband testified in rebuttal that because he did not cause the damage to the house, he objected *Page 545 
to sharing the cost of repairing that damage.
In its judgment, the trial court ordered the husband to pay $638 per month in child support for the parties' daughter and awarded the husband a $506 credit for an overpayment of child support. The trial court determined the amount of the credit by calculating the husband's $638 per month child-support obligation from November 1, 1999, and offsetting that amount by the amount of child support the husband had actually paid. The trial court also ordered that the marital home be sold, that the cost of any necessary repairs be deducted from the wife's equity in the home, and that any remaining equity be evenly divided between the parties upon the sale of the marital home.
On appeal, the wife argues that the trial court erred in refusing to hold the husband in contempt with regard to his refinancing of the indebtedness on the marital home and for his failure to provide her health-insurance coverage. In her pleading filed in the trial court, the wife sought to have the husband held in contempt for allegedly wrongfully taking possession of the wife's automobile; the parties reached an agreement with regard to that issue, and the trial court's June 7, 2001, order incorporated the terms of that agreement. The record contains no other pleading in which the wife sought to have the husband held in contempt with regard to any other issue. It appears that the wife first raised the issue of contempt as to these two matters in her postjudgment motion.
Neither party addresses whether the wife raises these two issues for the first time on appeal or whether the two issues may be deemed to have been tried by the implied consent of the parties. Pursuant to Rule 15(b), Ala.R.Civ.P., an issue tried by the implied consent of the parties shall be treated as if it were raised in a party's pleadings. However, where "the evidence on [an] issue [a party claims was tried by implied consent] is also relevant to the issue expressly litigated, there is nothing to indicate that a new issue was raised at trial, and the pleadings are not deemed amended under Rule 15(b)." McCollum v. Reeves,521 So.2d 13, 17 (Ala. 1987) (citation omitted). Although it is not clear in this case that the wife's issues were tried by the implied consent of the parties, the husband has not objected to the use of that evidence nor has he argued that he would be prejudiced by the consideration of that evidence. See Bowker v. Willis, 580 So.2d 1333,1335-36 (Ala. 1991) (a party may object to the consideration of issues not framed by the pleadings and must show that he would be prejudiced by the consideration of those issues). Therefore, out of an abundance of caution, we will address the issues as framed by the wife in her brief on appeal.
 "`[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, [the appellate] court will affirm.' Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App. 1994)."
Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala. 1999).
In Watson v. Watson, 696 So.2d 1071 (Ala.Civ.App. 1996), the husband sought to have the wife held in contempt for failing to comply with an order that she return a rifle scope to him. The wife testified that she did not have the rifle scope and that she did not know where it was located. The trial court refused to find the wife in contempt, and the husband appealed. This court affirmed, stating that because the trial court reached its decision after *Page 546 
receiving ore tenus evidence, its determination whether the wife was in contempt was entitled to a presumption of correctness on appeal. Watsonv. Watson, 696 So.2d at 1073. This court held that because the evidence was in dispute, it could not say that the trial court's judgment as to the issue of contempt was plainly or palpably wrong. Watson v. Watson,696 So.2d at 1074.
The wife, in her brief on appeal, asserts that she submitted documents indicating that the husband had not mortgaged the 6.1 acres together with the marital home; therefore, she contends that the $134,000 mortgage on the property afforded the husband a great deal of equity in the home, and that she was entitled to one-half of the equity. The wife argues that the trial court could not disregard the documentary evidence and consider the husband's testimony that the mortgage indebtedness was secured by the marital home and the total of 7.1 acres of land. We do not agree. Only a portion of the mortgage documents are included in the record on appeal; neither party submitted any mortgage documents pertaining to the 6.1 acres. The husband testified that the 6.1 acres also secured the two refinanced mortgages, and the wife did not present evidence to dispute that testimony. Thus, the wife has not presented evidence in support of her assertion that the husband "misled" the court in testifying that the mortgages were secured by both the marital property and by the 6.1 acres he was awarded in the divorce judgment. The evidence supports a conclusion that the marital home and the 7.1 acres of property secured the mortgage indebtedness; thus, the evidence also supports a conclusion that the husband did not obtain additional equity in the marital home when he refinanced the home plus the surrounding 7.1 acres of land. SeeEx parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996) ("in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support is judgment, unless such findings would be clearly erroneous.")
As part of her argument on this issue, the wife contends that the husband, in refinancing the marital home, intentionally deprived her of her equity in the marital home. However, it is undisputed that the parties, at the time of their divorce, had approximately $2,000 in equity in the marital home; the wife's one-half of that amount would result in an award to her of $1,000 in equity. When he refinanced the marital home one year after the parties' divorce, the husband repaid the wife's credit-card indebtedness of $2,220, an amount that exceeded her portion of the equity in the marital home.
Further, the evidence supports a conclusion that the wife badly damaged the marital residence before she vacated it. The trial court ordered that the cost of repairing that damage be deducted from the wife's equity in the home; the judgment then specifies that, after the deduction of the cost of those repairs from the wife's equity, any remaining equity is to be equally divided between the parties. Given the facts of this case, we cannot say that the trial court was plainly and palpably wrong in refusing to find the husband in contempt with regard to his refinancing of the indebtedness secured by the marital home. See Watson v. Watson, supra.
The wife also argues that the trial court should have held the husband in contempt for his failure to provide her health-insurance coverage. The divorce judgment required that the husband provide the wife with health-insurance coverage for two years. The husband testified that he provided health-insurance coverage for the wife for one year and eight months. The husband testified that when he remarried, his health-insurance provider required that the wife be covered under the *Page 547 
"COBRA" health-insurance plan. The husband testified that he attempted to have the wife covered under the COBRA plan, but that the wife did not complete and return all of the necessary paperwork for that plan; he also stated that the wife never forwarded any bill for coverage under that plan to him. The wife disputed that testimony and stated that she had completed the required paperwork and returned it to the husband. Thus, the testimony as to this issue was in conflict. "Whether a party is in contempt of court or has failed to abide by the provisions of a divorce [judgment] is a question committed to the sound discretion of the trial court." Anonymous v. Anonymous, 620 So.2d 43, 45 (Ala.Civ.App. 1993). Given the conflict in the evidence on this issue, we cannot say that trial court erred in not finding the husband in contempt with regard to his failure to provide the wife four months of health-insurance benefits. Watson v. Watson, supra; Anonymous v. Anonymous, supra.
The wife next argues that the trial court erred in refusing to include certain amounts in its determination of the husband's gross income for the purpose of calculating the husband's child-support obligation. It is undisputed that the cost to the husband of his employer-provided health insurance is $121 per month. The husband's employer pays an additional $458 per month to provide that health-insurance coverage. The wife contends that the $458 per month the employer pays for the husband's health-insurance coverage should be included in the calculation of the husband's gross income.
The wife has cited no authority that would establish that the portion of health-insurance coverage paid by a parent's employer should be included as income to that parent for the purposes of calculating child support. The Rule 32, Ala. R. Jud. Admin., Child Support Guidelines provide that in calculating a parent's gross income for the purpose of calculating child support, the parent's income "from any source" must be considered. Rule 32(B)(2)(a), Ala. R. Jud. Admin. Further, "[e]xpense reimbursements or in-kind payments" are also to be considered as "other income" in determining a parent's gross income. Rule 32(B)(4), Ala. R. Jud. Admin. The employer does not report the amount it pays to provide the husband health-insurance coverage as income to the husband. Further, the record contains no evidence indicating that that amount constitutes an "expense reimbursement or in-kind payment" to the husband. See
Rule 32(B)(4). We cannot agree with the wife's argument that the $458 per month the husband's employer pays for his health-insurance coverage should be attributed to the husband as income for the purpose of calculating the husband's child-support obligation.
The wife also argues that the trial court erred in determining whether an arrearage existed in the husband's child-support obligation for the parties' son. In exchange for the husband's agreement to take over the payment of the note and the insurance on the wife's automobile the wife agreed that the husband's child-support obligation for the parties' son be calculated from November 1999, the month after the son reached the age of majority; the trial court incorporated the terms of that agreement in its June 7, 2001, order. In a motion to set aside the June 7, 2001, order, and again at the modification hearing, the wife argued that neither she nor her attorney could waive any child-support payments that had accrued after the child reached the age of majority but before the husband filed his March 28, 2001, petition to modify. The trial court refused to set aside its June 7, 2001, order.
We note that the divorce judgment required the husband to pay $1,006 *Page 548 
per month for both children, rather than specifying an amount of support for each child; therefore, one child's obtaining the age of majority did not work to automatically terminate the husband's child-support obligation. State ex rel. Dep't of Human Res. v. Curran, 716 So.2d 1196,1197 (Ala.Civ.App. 1997). Child-support payments that mature or become due before the filing of a petition to modify are not modifiable. Exparte State ex rel. Lamon, 702 So.2d 449 (Ala. 1997). A child-support obligation may be modified only as to installments that accrue after the filing of a petition to modify the child-support obligation. Rule 32(A)(3)(a), Ala. R. Jud. Admin. See also Stinson v. Stinson, 729 So.2d 864
(Ala.Civ.App. 1998) (affirming a judgment terminating a noncustodial parent's obligation to pay child support as of the date of the filing of the petition to modify, where the child reached the age of majority approximately 10 months before the noncustodial parent filed his petition to modify). We must conclude that the trial court erred in refusing to set aside its June 7, 2001, order, and that the husband's child-support obligation for the son and whether any arrearage existed must be determined by calculating the amounts of child support due until the date of the husband's petition to modify his child-support obligation. We must reverse as to this issue and remand for further proceedings consistent with this opinion.
The appellee's request for an attorney fee is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, P.J., and Crawley and Pittman, JJ., concur.