897 So.2d 313 (2004)
Thomas H. TATUM, Jr.
v.
Cheryl Tatum CARRELL.
2030347.
Court of Civil Appeals of Alabama.
August 13, 2004.
*314 Robert T. Ray, Fort Payne, for appellant.
Michael W. Fuller of Fuller & Willingham, Cullman, for appellee.
PER CURIAM.
Cheryl Tatum Carrell ("the mother") and Thomas H. Tatum, Jr. ("the father"), were divorced pursuant to an April 27, 1999, judgment of the trial court. Two children were born of the parties' marriage, a son and a daughter; the son's date of birth is January 24, 1983, and the daughter's date of birth is May 26, 1986. At the time of the parties' divorce, both of the children were minors. The divorce *315 judgment, which incorporated the terms of a settlement agreement between the parties, among other things, awarded the mother primary physical custody of the daughter and awarded the father primary physical custody of the son. Although the divorce judgment did not require either party to pay child support, it reserved the "issue of child support on a proper petition by either party." The divorce judgment further ordered that the father maintain medical insurance on the minor children; the divorce judgment also divided the parties' property and ordered the father to pay $750 in monthly periodic alimony.
On January 14, 2002, the mother, proceeding pro se, filed a "Motion for Order to Show Cause and Motion to Modify Child Support." In her motion the mother alleged, among other things, that a substantial change in circumstances had occurred in that the father's income had substantially increased and the son, who was serving in the United States Air Force, would reach the age of the majority on January 24, 2002; the mother sought child support to assist in meeting the needs of the daughter. In support of her motion, the mother submitted, among other things, a copy of the divorce judgment.
After the father was purportedly served by publication and failed to answer, the mother moved for a default judgment on June 5, 2002. In support of her motion for a default judgment, the mother submitted, among other things, 1) a Form CS-43, "Child Support Guidelines Notice of Compliance," in which she indicated that she had deviated from the child-support guidelines and imputed income to the father; 2) a Form CS-42, "Child Support Guidelines," reflecting, among other things, a $40 adjustment to the father's proposed child-support obligation for his payment of health insurance for the daughter; 3) a Form CS-41, "Child Support Obligation Income Statement/Affidavit," for herself and one that she had prepared for the father; 4) a copy of her 2001 federal income-tax return; 5) a copy of a letter from her employer at that time stating her salary; and 6) a copy of a State of Florida "Statewide Occupational Wages" sheet for the year 2002 that she used to impute wages to the father based on his last known job title.
On July 5, 2002, the trial court entered a default judgment against the father; that judgment provided, in pertinent part, that "[t]he father shall pay to the mother the sum of ... $649.31 ... per month as current child support."
Thereafter, on September 3, 2002, the father filed a motion for relief from the judgment pursuant to Rule 60(b), Ala. R. Civ. P., alleging that he was not served with notice of the mother's January 14, 2002, motion and that the information the mother had provided on the Forms CS-41 and CS-42 was incorrect. On September 4, the trial court set aside the default judgment for "a failure of service of process by publication."
On January 2, 2003, the father answered.[1] Numerous discovery requests, as well as numerous motions and hearings relating to those discovery requests, ensued over the next eight and one-half months until the trial of the case on October 20, 2003. Relevant to this appeal is a motion to compel that the father filed on October 17, 2003, requesting that the trial *316 court order the mother's former employer to comply with a subpoena to provide the father with the mother's income information; in that motion, the father alleged that he "suspect[ed that that information would] show that the mother is [u]nderemployed."[2]
Also, approximately one month before the trial of the case, the father filed a motion asking the trial judge to recuse himself from the case. As grounds for recusal, the father alleged that the trial judge had received substantial political contributions from the law firm where the mother worked as a paralegal and that, although he was making "no suggestion of improprieties," there "appears to be a strong indication of bias" due to what the father described as the mother's groundless delay tactics. The father further alleged that the trial judge, the mother, and the daughter were all members of the same church and that the pastor of that church might testify at the trial. The mother filed a response to the father's motion to recuse and denied the material allegations of that motion. The trial court denied the father's motion to recuse on October 3, 2003.
On October 9, 2003, the mother filed an amended Form CS-41; that amended form reflected that the mother received monthly employment income in the amount of $2,916.67 and monthly alimony in the amount of $750, for a total of $3,666.67.
At the October 20, 2003, trial, the mother was represented by counsel and the father proceeded pro se. At the time of the trial, the mother lived in Cullman and the father lived in Florida. Only the parties testified at the trial.
The mother testified that she was employed with a law firm as a paralegal earning an annual salary of $35,000; she testified that she was paid $1,346.40 every two weeks for 80 hours of work. The mother testified that she began that job in March 2003. The mother introduced into evidence copies of seven pay stubs from her current job and a copy of her 2002 federal income-tax return. The mother also introduced into evidence the October 9, 2003, amended Form CS-41.
The mother testified that her employer provided and paid for her health-insurance coverage. When questioned during cross-examination regarding the cost of that insurance to her employer, the mother testified that she did not know how much that insurance cost her employer. The mother testified that she received $749 in monthly alimony.[3] The mother testified that her monthly income was $3,666.67; the mother arrived at that figure by dividing $35,000 (her annual salary) by 12 months, which equals $2,916.67, and then adding $750 in monthly alimony.
During cross-examination, the father also questioned the mother about her overtime pay and her employer-provided parking. Regarding her overtime pay, the mother admitted that overtime pay was included on the pay stubs that she had introduced into evidence. Those pay stubs reveal that the mother earned overtime pay during six of the seven two-week pay periods the stubs represented and that a "year-to-date" overtime-pay total was reflected on each pay stub. The last stub for the pay period ending September 19, 2003, *317 reflected "year-to-date" overtime pay in the amount of $1,645.98 for a total of 65 hours and 12 minutes of work.[4]
The father attempted to question the mother about her employer-provided parking, contending that it constituted income to the mother, but the trial court cut him off, saying that it was not relevant.
The father testified that he receives over $20,000 annually in military-retirement income and that he receives approximately $1,600 in monthly income after taxes. The father testified that he also receives approximately $100 monthly in "Military, VA" disability benefits for a hearing disability. The father introduced into evidence the first page of his 2002 federal income-tax return. The father testified that he was not currently employed and that he currently resides with his parents and friends, in military housing, and in his car because he doesn't have the money to pay for a permanent residence. The father testified that he was laid off from his last job with Amatech in "contract work" and "project-management work" in December 2000. The father testified that he had earned a salary of $45,000 annually at that job. The father testified that he had a bachelors degree in international relations and a masters degree in business. According to the father, he has applied for "hundreds" of jobs since he was laid off and his last job interview was approximately three months before the trial for a "contracts position" with "Techaload or something like that."
Additional relevant portions of the father's testimony regarding his work status include:
"[MOTHER'S COUNSEL]: Did they give you any reason for not hiring you?
"[THE FATHER]: Yes.
"[MOTHER'S COUNSEL]: What is that?
"[THE FATHER]: Not hiring me. I have been interviewed and pretty much the same answer, is, you know, your skills are impressive, your credentials are impressive; however, we have chosen another candidate. Standard answer.
"[MOTHER'S COUNSEL]: What types of jobs have you applied for?
"[THE FATHER]: All related to my past experience.
"[MOTHER'S COUNSEL]: And what is that?
"[THE FATHER]: Contracts procurement work.
"[MOTHER'S COUNSEL]: With what?....
"[THE FATHER]: Contracts, government work, software, whatever?
"[MOTHER'S COUNSEL]: Planes or software work or 
"[THE FATHER]: Software work, planes, whatever was my background of experience.
"....
"[MOTHER'S COUNSEL]: Generally, what do people do with your expertise, *318 schooling and credentials, what type of salary would you draw?
"[THE FATHER]: It can vary anywheres from 25 thousand, up to, you know, 50 thousand. It depends on what the company is willing to pay in today's economy.
"....
"[MOTHER'S COUNSEL]: Is there anything keeping you from being employed?
"[THE FATHER]: There is nothing keeping me from being employed.
"....
"[MOTHER'S COUNSEL]: But it's your testimony that at any moment, based on your credentials and education, that you could obtain employment?
"[THE FATHER]: I firmly believe that I could if offered an opportunity in today's economy.
"[MOTHER'S COUNSEL]: Well, you've testified that you have applied at hundreds of employers?
"[THE FATHER]: That's correct.
"[MOTHER'S COUNSEL]: And hundreds of employers have turned you down?
"[THE FATHER]: No, sir. Nobody has turned me down. They just don't respond. When you have a hundred and fifty applicants per position, you tell me what the odds are, ...?
"[MOTHER'S COUNSEL]: I'm asking the questions, sir.
"....
"[THE FATHER]: [Counsel for the mother] has made a point to bring out my unemployment situation. I have tried to, for the Court's record, to make it clear that there is no willful malice on my part to not work. I would like to present into evidence, if I could, Your Honor, a listing of newspaper articles to the courts to substantiate the hard times and the straits of the economy that we are in.
"[TRIAL COURT]: Well, I don't need the newspaper.
"[THE FATHER]: Well, I'm just saying, Your Honor 
"[TRIAL COURT]: I would accept any documentation showing the efforts that you have made to obtain employment if you have that.
"[THE FATHER]: Okay. All right. Your Honor, if that is the case, then I will present the interrogatories....
"....
"[TRIAL COURT]: Are these sworn answers to interrogatories?
"....
"[THE FATHER]: These are my answers to the interrogatories, yes.
"....
"[TRIAL COURT]: All right. It's in evidence."[5]
The record also includes a copy of a letter, dated October 20, 2003 (the same date as the trial), from the father to the trial judge, requesting, among other things, that the trial judge make an adjustment to the father's proposed child-support obligation to reflect that he pays $40 monthly for health insurance for the daughter. That letter did not possess a date stamp from the Cullman Circuit Clerk, and the certificate of service on that letter indicates that it was mailed to the *319 mother's counsel on October 21, 2003. The record also includes an amended Form CS-42, dated October 28, 2003, apparently filed by the mother; that amended form did not provide the father a $40 adjustment to his child-support obligation for his payment of health insurance for the daughter.
On November 5, 2003, the trial court entered a judgment that provided, in pertinent part, as follows:
"It appears that the main issue[ ] before the Court [is] the modification of child support for the parties' [daughter]....
"....
"Pursuant to the Divorce Judgment, the [mother] was vested with the full care, custody and control of the parties' ... daughter ... and the [father] was vested with the full care[,] custody and control of the parties ... son.... It was ordered that no child support was to be paid by either party due to the custody arrangement....
"Since the date of the Divorce Judgment of the parties, the parties' ... son ... has obtained the age of majority and has entered into the United States Armed Forces. [The son] no longer resides with the [father], hence the [mother] filed a Petition to Modify child support for the parties' ... daughter... alleging a material change of circumstances due to the fact the parties son no longer resides with the [father].
"The [mother] works for the law firm of Hollis & Wright at a salary of $35,000 per year. The mother also receives alimony from the father in the amount of $750 per month....
"The [father] stated that he currently draws a retirement income from the United States Air Force with said income being $22,312.56 per year. The [father] spent 18 years in the military. The [father] has a Business Degree from the University of Alabama, as well as a Masters Degree from the University of Central Michigan. The [father] was most recently employed as a project manager for AmaTech Company in Tampa, F[lorida]. The [father] stated that he made a salary of $45,000 before his employment was terminated through downsizing by the company. The [father] stated that he has applied for and been turned down for numerous jobs[;] however, the father testified that based on his experience and education he could be easily employed.
"....
"The court took testimony ore tenus and received exhibits during the trial. Considering all the evidence, the Court finds the following facts:
"1. The [mother] has shown a material change in circumstances to justify a modification of the original [divorce judgment] for the awarding of child support to the mother for the [daughter].
"2. The [mother] is employed and making a salary of $35,000 per year and receiving alimony in the amount of $750 per month.
"2. The [father] receives Military Retirement Pay in the amount of $22,312.56 per year. The Court finds that the father is underemployed and due to his education and work experience, imputes an income of $38,000 per year to the [father].
"....
"It is ORDERED, ADJUDGED and DECREED that:
"1. The father shall pay to the mother $481 per month as Child Support in accordance with Rule 32 of the Alabama Rules of Judicial Administration. The worksheet of said calculation is attached *320 to this Order and marked as exhibit `A.'"[6]
On December 5, 2003, the father filed a motion to alter, amend, or vacate the judgment. Relevant to the issues that the father raises on appeal, the father alleged that the trial court "failed to credit [him] the $40 for the cost of Court ordered [health] insurance"; the father also alleged that certain information that he had subpoenaed from the mother's former employer before the trial and received after the trial indicated that the mother's income exceeded the amount stated on her amended October 2003 Form CS-41. The father acknowledged in his postjudgment motion that the trial court had denied his motion to compel production of that information at the trial.
In support of his postjudgment motion, the father submitted, among other things, a Form CS-41 reflecting an average monthly salary from his last job of $3,750.00, a current gross monthly income of $1,859.38, and a payment of $40 for a monthly health-insurance premium for the daughter. The father also submitted a letter from the mother's former employer reflecting that that employer had paid the mother "$1,178, $1,078, $1,078 and $6,468 during the year 2003"; that letter did not specify the type, or types, of income those amounts included. We note that because the mother began her current job in March 2003, those amounts appear to have been paid to the mother by her former employer in the early part of 2003.
The father requested that the trial court recalculate child support without imputing income to him, to include the amount he paid for health insurance in its child-support determination, and to adjust its finding concerning the mother's income to include the information he had submitted from her former employer.
On December 10, 2003, the mother filed a response to the father's motion to alter, amend, or vacate. Regarding the father's payment of medical insurance for the daughter, the mother alleged, in pertinent part, that the father had failed to introduce any evidence regarding health insurance during the trial. The trial court denied the father's postjudgment motion on December 10, 2003.
The father, who is now represented by counsel, timely appealed. The father first contends on appeal that the trial court erred in calculating his child-support obligation because, he says, it failed to consider the following items in reaching its determination of the mother's gross income: employer-provided health insurance, overtime pay, bonuses, and employer-provided parking.
This court has held that matters related to child support, including modifications of a child-support order, rest soundly within the trial court's discretion and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence and thus is plainly and palpably wrong. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App.1997); Williams v. Braddy, 689 So.2d 154 (Ala.Civ.App.1996). A presumption of correctness attaches to a trial court's judgment when the trial court receives ore tenus evidence, and, unless the evidence shows the trial court to be palpably wrong, we must affirm the judgment. Berryhill v. Reeves, 705 So.2d at 507.
Rule 32(B)(2), Ala. R. Jud. Admin., defines "gross income" as follows:

*321 "(a) `Gross income' includes income from any source, and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, capital gains, Social Security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and preexisting periodic alimony."
This court, in Woods v. Woods, 851 So.2d 541 (Ala.Civ.App.2002), addressed the issue whether the employer-paid portion of a parent's health-insurance coverage is included in that parent's gross income under Rule 32, Ala. R. Jud. Admin. In Woods v. Woods, this court, after noting that the husband's employer in that case did not report the $458 per month it paid to provide the husband health-insurance coverage as income to the husband and that the record did not contain any evidence indicating that that amount constituted an "expense reimbursement or in-kind payment" to the husband within the meaning of Rule 32(B)(4), Ala. R. Jud. Admin., held that the employer-paid portion of the husband's health-insurance coverage should not be attributed to the husband as income for the purpose of calculating the husband's child-support obligation. 851 So.2d at 547.
In the present case the mother's pay stubs do not reflect that the value of her employer-provided health insurance is income to her. Further, there is no evidence of the cost to the mother's employer of her employer-provided health insurance. Even if the record contained evidence of the cost to the mother's employer of that insurance, we conclude that, given the authority of Woods v. Woods, supra, the trial court did not abuse its discretion by failing to include the cost of the mother's employer-provided health insurance in her gross income for the purposes of calculating child support.
This court, in State ex rel. Smith v. Smith, 631 So.2d 252, 255 (Ala.Civ.App.1993), has held that a parent's "`overtime' income falls within the definition of income for purposes of establishing [that parent's child-support] obligation ... to the extent that such income is sufficiently substantial and continuing, and that it can be accurately determined" and to the extent that such income is "neither speculative nor uncertain." However, in State ex rel. Smith v. Smith, this court further stated that
"we are mindful that there may be circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, thereby justifying its exclusion from income for purposes of setting child support or deviating from the child support guidelines, in which case the trial court should make a finding to that effect."
Id.
In the present case, the trial court did not include the mother's overtime pay in its calculation of her gross income, nor did it make a finding that that overtime pay was an anomaly or was uncertain or speculative so as to justify its exclusion. Our review of the record indicates that the mother has consistently received overtime pay at her current job; that overtime pay does not appear to be "an anomaly or ... uncertain or speculative... [as to] justify[ ] its exclusion." Smith, 631 So.2d at 255. The mother did not offer any testimony regarding her overtime pay, except to admit, on cross-examination, that it was included on her pay stubs. The mother's seven pay stubs from her current job that she introduced into evidence reflect that she received overtime pay during six of the seven two-week pay periods. Although some of the mother's pay stubs from her *322 current job were not introduced into evidence, it is evident that she earned overtime pay during some or all of those pay periods as well; the pay stubs reflect that in the 6-month period between mid-March 2003 and September 19, 2003, the mother earned overtime pay (excluding "holiday" pay)[7] in the amount of $1,645.98 for 65 hours and 12 minutes of overtime work. Accordingly, we conclude that the trial court abused its discretion by failing to consider the mother's overtime pay in determining her gross income for the purposes of calculating child support; we reverse the trial court's judgment as to this issue and remand this cause for the trial court to consider the mother's overtime pay in determining her gross income for the purposes of calculating child support. See State ex rel. Smith v. Smith, supra.
We summarily dispose of the father's contentions that the trial court erred by failing to include in the mother's gross income the alleged "bonus" income from her former job and her employer-provided parking at her current job as being without merit. Regarding the alleged "bonus" income, the trial court denied the father's motion to compel that subpoenaed information from the mother's former employer, in essence determining that that information was not relevant for purposes of determining the mother's gross income for current child-support purposes. There is no evidence in the record that the mother will receive any bonuses in her current employment. Regarding the employer-provided parking, although the father argues that "expense reimbursements or in-kind payments received by a parent in the course of employment shall be counted as income if significant and reduce living expenses," the father has cited no controlling authority that would establish that the value of employer-provided parking should be included as income to a parent for the purposes of calculating child support. Accordingly, we conclude that the trial court did not abuse its discretion by failing to include these items in the mother's gross income for the purposes of calculating child support. We note that a more detailed analysis of these issues would not alter our decision as to these issues, and the trial court's judgment as to these issues is affirmed.
Next, the father contends that the trial court erred in calculating his child-support obligation because, he says, the trial court failed to consider the cost to him for health-insurance coverage for the daughter. Rule 32(B)(7), Ala. R. Jud. Admin., states, in pertinent part:
"(a) The actual cost of a premium to provide health insurance benefits for the children shall be added to the `basic child support obligation' and shall be divided between the parents in proportion to their adjusted gross income in the percentages indicated on the Child Support Guidelines form (Form CS-42).
"(b) The amount to be added to the `basic child support obligation' shall be the actual amount of the total insurance premium for family/dependent coverage, regardless of whether all children covered are in the same family.
"(c) After the `total child support obligation' is calculated and divided between the parents in proportion to their `monthly adjusted gross income,' the amount added pursuant to subsection (b) shall be deducted from the obligor's share of the total child support obligation, provided the obligor actually pays said premium. If the obligee is actually paying the premium, no further adjustment is necessary."
*323 At the time the trial court entered its November 5, 2003, judgment, in addition to the mother's amended October 28, 2003, Form CS-42 reflecting that the father did not pay for health-insurance coverage for the daughter, the trial court had before it the original June 2002 Form CS-42 that the mother had filed in support of her motion for a default judgment reflecting that the father paid $40 monthly for health-insurance coverage for the daughter as well as a copy of the divorce judgment ordering the father to provide health insurance for the minor children. Although the father requested in his motion to alter, amend, or vacate, that the trial court make an adjustment in the calculation of his child-support obligation to reflect that he pays $40 monthly for health insurance for the daughter, the trial court declined to do so. "A noncustodial parent's child-support obligation is governed by the mandatory application of Rule 32, Ala. R. Jud. Admin." Morris v. Padgett, 890 So.2d 157, 159 (Ala.Civ.App.2004) (citing Smith v. Smith, 587 So.2d 1217 (Ala.Civ.App.1991)). Accordingly, we conclude that the trial court abused its discretion by failing to make an adjustment to the father's child-support obligation to reflect that he pays $40 monthly for health insurance for the daughter; we reverse the trial court's judgment as to this issue and remand this cause for the trial court to recalculate the father's child-support obligation consistent with this opinion.
Next, the father contends that the trial court erred in finding him to be voluntarily unemployed because, he says, there was undisputed evidence that, although he was unemployed, he was actively seeking employment.[8]
Under Rule 32(B)(5), Ala. R. Jud. Admin., a trial court "shall" impute income to a parent and calculate his or her child-support obligation based upon that parent's potential income if "the court finds that [the] parent is voluntarily unemployed or underemployed." This court, noting that the language of Rule 32 is mandatory, has held that where a trial court finds a parent to be voluntarily unemployed or underemployed, it is required to impute income to that parent. T.L.D. v. C.G., 849 So.2d 200, 206 (Ala.Civ.App.2002). However, the determination of whether a parent paying child support is voluntarily underemployed or unemployed is discretionary with the trial court. Mitchell v. Mitchell, 723 So.2d 1267 (Ala.Civ.App.1998). "A determination that a parent is voluntarily unemployed or underemployed `is to be made from the facts presented according to the judicial discretion of the trial court.'" Berryhill v. Reeves, 705 So.2d at 507 (quoting Winfrey v. Winfrey, 602 So.2d 904, 905 (Ala.Civ.App.1992)). Under Rule 32(B)(5), Ala. R. Jud. Admin.,
"[i]n determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent's recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community."
In her complaint to modify the amount of child support, the mother alleged that the father had the ability to pay child *324 support for their daughter. The mother offered no evidence of the father's ability to pay child support and thus failed to carry her burden of proof. Reeves v. Reeves, 894 So.2d 712 (Ala.Civ.App.2004) (holding that the parent seeking modification of child support bears the burden of proof). To the contrary of the mother's allegation, the father presented uncontroverted evidence of his good-faith effort to obtain employment. Even if the trial court disbelieved the father's testimony, the mother still had not met her burden of proof.
The evidence established, and the mother did not refute, that the father was involuntarily unemployed. "Involuntary" is defined as "[n]ot voluntary; done or happening without exercise or without co-operation of the will; not done willingly or by choice; independent of volition, unintentional." VIII The Oxford English Dictionary 56 (2d ed.1989). Thus, the issue was whether the father was voluntarily unemployed at the time of trial.
The father testified as to his recent work history, education, occupational qualifications, and earning levels, which were the bases of the trial court's finding that the father was voluntarily unemployed. The judgment states that "[t]he Court finds the [father] is [unemployed] and due to his education and work experience, imputes an income of $38,000 per year to the [father]." Thus, the trial court did not consider, nor was there any evidence of, "the prevailing job opportunities." "Opportunity" is defined as "[a] time, juncture, or condition of things favourable to an end or purpose, or admitting of something being done or effected; occasion, chance." X The Oxford English Dictionary 866 (2d ed.1989).
The father testified that during the period from his layoff in December 2000 to the trial in October 2003, he had applied for hundreds of jobs. His answer to the mother's interrogatories listed as many as 79 companies to which he had applied for a job in the previous 9 months. However, the evidence was undisputed that he did not receive any offers and, thus, that he had no opportunity to work.
The father sought employment based upon his qualifications. His search extended outside his home state of Florida into the states of South Carolina, Tennessee, North Carolina, Texas, California, Maryland, Georgia, New Jersey, and Wisconsin. Many companies were identified only by their e-mail address or Web site. The father testified that the salaries varied from $25,000 to $50,000. The father testified that there was nothing keeping him from being employed. He said, "I firmly believe that I could [obtain employment] if offered an opportunity in today's economy." (Emphasis added.) In denying the father's offer to introduce "newspaper articles ... to substantiate the hard times and the straits of the economy that we are in," the trial court acknowledged his awareness of hard times by stating, "I don't need the newspaper."
The mother did not dispute the father's qualifications for the jobs he sought, the geographic area of the search, the salary sought, or the father's willingness to accept employment. The mother offered no evidence that cast doubt upon whether the father's efforts were made in good faith or that indicated that the father should have taken additional measures to obtain employment.
A judgment where there is no evidence, other than speculation, must be reversed. Dolgencorp, Inc. v. Hall, 890 So.2d 98 (Ala.2003) (holding that speculation was insufficient to show negligence on the part of a store owner); King v. City of Birmingham, 885 So.2d 802 (Ala.Civ.App. *325 2004) (stating that a finding that is unsupported by any evidence is clearly erroneous); and Berryman v. Adams, 883 So.2d 214 (Ala.Civ.App.2003) (holding that a mother who sued on behalf of the parties' children, seeking the proceeds of a life-insurance policy held by the father at his death, had not proved the children's right to the proceeds because she had not established that the insurance policy referred to in the parties' divorce judgment and naming the children as beneficiaries was the same policy, or a replacement policy, as that owned by the father at the time of his death).
There was no evidence that the father was voluntarily unemployed to avoid payment of child support. Since the divorce, he had paid approximately $50,000 in alimony at the rate of $750 per month (about 45 percent of his net monthly income), which he did not contest, had provided a home for the parties' son, and had covered both children on his health insurance.
We hold that the portion of the judgment finding the father to be voluntarily unemployed and imputing to him an additional income of $38,000 is unsupported by the evidence and is therefore due to be reversed.
Finally, the father contends that the trial court erred in denying his pretrial motion for the trial judge to recuse himself, because, he says, there was undisputed evidence that demonstrates that the trial judge's impartiality might reasonably be questioned.
"[A] `mere accusation of bias' that is not supported by substantial facts does not require a judge's recusal. Oliver v. Towns, 738 So.2d 798, 804 (Ala.1999). The test is whether a person of ordinary prudence who knows all of the facts known to the judge would conclude that there is a reasonable basis upon which to question the judge's ability to be impartial. Id."
General Motors Corp. v. Jernigan, 883 So.2d 646, 674 (Ala.2003).
In the present case, the father conceded in his motion to recuse that he was making "no suggestion of improprieties." Further, the father failed to substantiate his accusations of bias in his motion to recuse. Therefore, we cannot say that the father demonstrated that the trial judge erred in refusing to recuse from this case. General Motors Corp. v. Jernigan, supra; Oliver v. Towns, supra. Accordingly, the trial court's judgment as to this issue is affirmed.
That portion of the trial court's judgment regarding child support is reversed, and the cause is remanded for the trial court to recalculate the child support in accordance with Rule 32, Ala. R. Jud. Admin., and consistent with this opinion. The remainder of the trial court's judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
THOMPSON, J., concurs in part and dissents in part, with writing, which YATES, P.J., joins.
THOMPSON, Judge, concurring in part and dissenting in part.
I agree with the main opinion except as to the reversal of that portion of the trial court's judgment finding the father to be voluntarily unemployed and imputing to him an additional income of $38,000. The main opinion concludes that that finding was unsupported by the evidence in that, it reasons, the mother failed to carry her *326 burden of proof on this issue and the trial court's judgment as to this issue was based on speculation. However, the father did not specifically argue on appeal that the mother failed to carry her burden of proof on this issue or that the judgment as to this issue was based on speculation;[9] instead, the father argues that the trial court erred in finding him to be voluntarily unemployed because, he claims, he offered undisputed evidence that, although unemployed, he was actively seeking employment but could not find employment, citing Winfrey v. Winfrey, 602 So.2d 904 (Ala.Civ.App.1992).
In Winfrey, this court, applying the presumption of correctness a trial court's judgment is entitled to under the ore tenus rule,[10] affirmed the judgment of the trial court finding in that case that the father was not voluntarily unemployed. See generally id. Although in the present case the father argues in his appellate brief that this court reversed the judgment of the trial court in Winfrey based on "undisputed evidence," this court actually affirmed the judgment of the trial court in that case by applying the ore tenus rule. See generally id.
In the present case, the trial court found that "the [father] stated that he has applied for and been turned down for numerous jobs[;] however, the father testified that based on his experience and education he could be easily employed." The father argues in his appellate brief that that finding of the trial court misconstrues his testimony. Although I might tend to agree with the father that that finding may slightly misstate his testimony, the trial court stated that it imputed an income of $38,000 to the father "due to his education and work experience." Because that latter finding supports the trial court's imputation of income to the father, and because of the trial court's opportunity to observe the father during his testimony and the presumption of correctness that attaches to the trial court's judgment under the ore tenus rule, as well as the totality of the evidence in this case relating to the factors a trial court should consider under Rule 32(B)(5), Ala. R. Jud. Admin., I do not conclude that the trial court abused its discretion by imputing income of $38,000 to the father.
In the present case, the trial court heard the father's testimony and could have determined that, based on his education and work experience, the father's claim that he was unable to find employment was exaggerated or untrue or that the father should take additional measures to obtain employment. Although the father was the only witness to testify regarding this issue and the mother did not necessarily refute his testimony, it still fell on the trial court to assess the father's credibility. Smith v. Smith, 887 So.2d 257 (Ala.Civ.App.2003). In Smith, this court applied the ore tenus rule in a divorce action where the mother was the only witness to testify, stating:
"`"The ore tenus rule is grounded upon the principle that when the trial court *327 hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses."' Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001)(quoting Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)). Thus, the mother's contention that the ore tenus rule does not apply to this case because she presented the only testimony and, therefore, the facts are undisputed, is incorrect. The trial court heard both the mother's testimony on direct examination and on cross-examination, and it had the opportunity to evaluate the mother's demeanor and credibility. We must review the divorce judgment with that in mind."
Smith v. Smith, 887 So.2d at 262. Accordingly, I conclude that the trial court's judgment as to this issue should be affirmed.
YATES, P.J., concurs.
NOTES
[1] The father also filed a counterclaim on January 2, 2003; however, the father voluntarily dismissed his counterclaim at the trial of this case. We also note that on January 8, 2003, the mother filed a "First Amended Motion for Order to Show Cause and Motion to Modify Child Support" that raised matters between the parties that are not relevant to this appeal. Therefore, those matters will not be discussed in this opinion.
[2] By the time he filed the motion to compel, the father was proceeding pro se.
[3] The mother testified that although the father was ordered to pay $750 in monthly alimony, she received $749 because the father refused to pay the one dollar circuit-court-clerk charge.
[4] The mother's pay stubs also include "holiday" pay as a separate income category; the mother's last stub for the pay period ending September 19, 2003, reflects "year-to-date" "holiday" pay in the amount of $471.24 for 28 hours of work. Although the father states in his appellate brief that "by September 24, 2003, [the mother] had received over $2,000 in overtime," which by our mathematical calculations would include the "holiday" pay, we do not discuss the "holiday" pay in this opinion because the father does not specifically argue that "holiday" pay should be included for purposes of calculating child support. Therefore, the father is deemed to have waived any argument he might have asserted with regard to that matter. Robino v. Kilgore, 838 So.2d 366, 370 (Ala.2002) (appellant deemed to have waived an issue it failed to argue in its appellate brief).
[5] The record indicates that the father actually introduced into evidence a copy of his answers to certain interrogatories to show that he had applied for numerous jobs. Although it does not appear that the father introduced the interrogatories into the record, it is apparent that the father's answers to the interrogatories indicate that the father applied for 34 to 79 jobs.
[6] Exhibit "A" appears to be the mother's October 28, 2003, amended Form CS-42. Based on that amended form, it is clear that the trial court imputed $38,000 of income to the father in addition to his military-retirement income.
[7] See n. 4, supra.
[8] We note that the father argues for the first time in his reply brief that the trial court erred by failing to make a specific finding that the father was voluntary unemployed. Because the father did not raise this issue in his initial brief or at the trial-court level, we "will simply treat such issue[] as not before the Court." Kennesaw Life & Accident Ins. Co. v. Old Nat'l Ins. Co., 291 Ala. 752, 754, 287 So.2d 869, 871 (1973).
[9] I do not believe that this court should have made those arguments for the appellant. "An appellate court ... will not search out errors which have not been properly preserved or assigned." Ex parte Riley, 464 So.2d 92, 94 (Ala.1985). Further, it is not the function of this court to create arguments for an appellant. McLemore v. Fleming, 604 So.2d 353 (Ala.1992); Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998).
[10] In Winfrey, the trial court stated that "[t]he determination [of whether a parent is voluntarily unemployed or underemployed] is to be made from the facts presented according to the judicial discretion of the trial court." 602 So.2d at 905 (citing Doyle v. Doyle, 579 So.2d 651 (Ala.Civ.App.1991)).